UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

P.A. CASE,

                         Plaintiff,

     -against-                                    6:21-CV-98 (LEK)

COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

On January 27, 2021, Plaintiff P.A. Case commenced this action pursuant to 42 U.S.C. §

405(g), seeking review of the decision of the Commissioner of Social Security

("Commissioner") denying her application for Supplemental Security Income ("SSI") for lack of

disability. Dkt. No. 1 ("Complaint"). For the reasons set forth below, the Court affirms the

Commissioner's final decision.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff protectively filed for SSI on September 5, 2017. Dkt. No. 10 ("Administrative

Record" or "Transcript") at 10.[1] At the time of filing, Plaintiff was not working; Plaintiff last

worked for Rite Aid as a selector in a warehouse from 2004–2010. Id. at 57. Prior to her

employment at Rite Aid, she worked as a cashier at the Salvation Army. Id. Plaintiff testified that

she ceased work because of "[her] enlarged spleen." Id. at 61. Plaintiff also testified that her

---

[1] For the avoidance of doubt, the Court uses the large, bolded numbers that appear in the bottom
righthand corner of the Administrative Record when referring to specific pages therein.

enlarged spleen puts her at risk of "bleed[ing] to death" if she gets pushed or if she falls down. Id. at 61–62.

In Plaintiff's initial application for disability benefits, she claimed that she became disabled on August 1, 2010, but later amended her onset date to May 17, 2017. Id. at 59. After Plaintiff's claim was initially denied on May 8, 2018, she appeared at a hearing before Administrative Law Judge ("ALJ") Gretchen Greisler on October 3, 2019. Id. at 47. Thereafter, on August 20, 2020, a second hearing was held before ALJ Greisler to obtain medical expert testimony and additional vocational expert testimony. Id. at 97–99. The ALJ found that several medical conditions interfere with Plaintiff's ability to work including massive splenomegaly, neuropathy, carpal tunnel syndrome, myelofibrosis, lumbar spine degenerative changes, asthma, chronic obtrusive pulmonary disease ("COPD"), depressive disorder, antisocial personality disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"). Id. at 12 (citations omitted).

### 1.    Dr. Lorenson Physical Examination Evaluation

On December 29, 2017, Dr. Elke Lorenson, M.D. evaluated Plaintiff for a physical examination ordered by the Social Security Administration ("SSA"). Tr. at 650–53. Plaintiff told Dr. Lorenson that she stopped working in 2010 because of neck and back pain, which she was still experiencing at the time of evaluation. Id. at 650. Plaintiff reported leg pain caused by her peripheral neuropathy, as well as an enlarged spleen that gives her pain on the left side of her abdomen. Id. During the examination, Plaintiff walked with a normal gait, was able to rise from a chair without difficulty, and needed no help changing or getting on and off the examination table. Id. at 651. Her lungs were clear of auscultation, and she had a full range of motion in her spine and joints, full strength in her upper and lower extremities, and full grip of strength. Id. at

652. Dr. Lorenson observed that an X-ray of Plaintiff's lumbar spine showed "disc space narrowing." Id. at 652, 654. Dr. Lorenson assessed that Plaintiff had moderate limitations bending, lifting, and reaching. Id. at 653.

> 2.   *Interrogatories from Impartial Medical Expert Dr. Dhiman Regarding Plaintiff's Physical Health*

On November 8, 2019, Dr. Nitin Dhiman, M.D., an impartial medical expert, answered interrogatories concerning Plaintiff's physical limitations after performing a review of Plaintiff's medical records. Tr. at 1237–45. Dr. Dhiman opined that Plaintiff could perform a range of light work with the following limitations: frequent reaching, handling, pushing, and pulling due to Plaintiff's history of carpal tunnel syndrome, id. at 1237; frequent operation of foot controls due to past reports of decreased sensation in the lower extremities, id. at 1239; frequent balancing; occasional stairclimbing, stooping, crouching, and crawling due to peripheral neuropathy and lumbar spine changes, id. at 1240; no exposure to unprotected heights or toxic/caustic chemicals due to mental health, id.; and exposure to respiratory irritants, humidity, wetness, and extreme cold or heat "only as tolerated." Id.

> 3.   *Dr. Schaich Psychiatric Evaluation*

On December 29, 2017, Dr. David Schaich, Psy.D., performed a psychiatric evaluation at the request of the SSA. Tr. at 644–47. Plaintiff reported to Dr. Schaich that she had trouble sleeping but had a normal appetite. Id. at 645. She also described daily thoughts of suicide "with no plan," crying spells, a loss of interest, irritability, and hopelessness. Id. Moreover, Plaintiff reported past sexual abuse by her father and physical abuse by her mother, as well as nightmares, flashbacks, and anger. Id. She also stated that she experienced panic attacks about two to three times a week that were triggered by stores, people, crowds, and males. Id. During the examination, Plaintiff was cooperative with "fair" social skills, but at one point during the

interview, she stood up and requested a chaperone, and was "very sensitive and tearful throughout the interview." Id. at 646. Additionally, Dr. Schaich deemed Plaintiff's "insight" and "judgment" as "poor," but her thought processes were "coherent and goal directed," id. at 646. Plaintiff had a full range affect that was appropriate, possessed intact attention and concentration, as well as an intact memory and an "average general fund of information" that was "somewhat limited." Id. at 646–47.

Regarding daily activities, Plaintiff informed Dr. Schaich that she has trouble dressing, bathing, and grooming, and could not prepare food or do laundry but she could clean. Id. at 647. Plaintiff also stated that she does not socialize and explained that her family relationships were strained; she spends her days doing surveys for money, spending time with her boyfriend and son, and being on the internet. Id. Dr. Schaich further observed that Plaintiff has no limitations in her abilities to understand, remember, or apply simple or complex directions and instructions; sustain concentration to perform a task at a consistent pace; sustain an "ordinary routine and regular attendance;" maintain personal hygiene; wear appropriate attire; and be aware of ordinary hazards and take appropriate precautions. Id. Dr. Schaich assessed mild limitations in Plaintiff's abilities to: use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers, as well as the public; regulate emotions; control behavior; and maintain well-being. Id.

4.    *Opinion of State Agency Consultant M. Marks, Ph.D.*

On March 20, 2018, State agency psychological consultant, Dr. M. Marks, Ph.D. opined that Plaintiff had mild limitations with respect to understanding, remembering, or applying information, id. at 187; and moderate limitations concerning Plaintiff's ability to interact with others, concentrate, persist, or maintain pace and adapt or manage oneself. Id. at 188. He

concluded that, "despite some limitations, [Plaintiff] is able to understand and remember instructions and procedures, maintain [a] routine, interact[,] and adapt." Id.

### 5.    Ms. Jessica Trifiletti, L.M.S.W.'s Mental Assessment of Plaintiff

On September 27, 2019, Ms. Jessica Trifiletti, L.M.S.W. completed a questionnaire assessing Plaintiff's mental limitations. Tr. at 1107–10. Ms. Trifiletti opined that Plaintiff had either "marked" or "extreme" limitations in every category of functioning, including remembering very short and simple instructions. Id. at 1107–08. Ms. Trifiletti explained that Plaintiff had "made minimal progress over the past [two] years and [five] months" and had "displayed on several occasions at the clinic a fight or flight response and erratic behavior." Id. at 1109. She also estimated that Plaintiff's symptoms would cause her to be off task for at least 50% of the time and to miss more than four days of work per month. Id. On October 30, 2019, Plaintiff's treating psychiatrist Dr. Stephen Hudyncia added his signature to Ms. Trifiletti's opinion. Id. at 1220.

### 6.    Dr. Hudyncia and Dr. Shkane's Evaluation

On December 11, 2019, Dr. Hudyncia and Plaintiff's primary care physician, Dr. Julie Shkane, D.O., completed a medical examination of Plaintiff. Tr. at 1246–47. They opined that Plaintiff was "very limited" in her ability to interact with others, in maintaining socially appropriate behavior, and at functioning at a consistent pace; "moderately limited" in her ability to carry out instructions, maintain attention and concentration, make simple decisions; and that there was "no evidence of limitation" in her understanding and remembering instructions, and maintaining basic standards of personal hygiene. Id. at 1247. They also concluded that Plaintiff was "moderately limited" in her ability to walk, lift, carry, and climb stairs, and that there was no evidence of any limitation regarding Plaintiffs ability to stand, sit, see, hear, speak, and use her

hands. Id. They also opined that Plaintiff is "unable to work at this time," id., and that Plaintiff

has "complex post traumatic stress disorder." Id.

7.    *Plaintiff's October 3, 2019, Hearing Testimony*

On October 3, 2019, Plaintiff attended a hearing in Syracuse, New York, before ALJ

Gresiler. Tr. at 49. At the hearing, Plaintiff testified that she received her GED when she was 21

years old, id. at 56, and that she presently lives with a "significant other." Id. at 54. Moreover,

Plaintiff also explained she has a "rare blood disorder" resulting in an enlarged spleen, id. at 61,

and that if she fell, she is as risk to "bleed to death and die," id. at 62. Her enlarged spleen causes

bloating in her abdomen and makes it "hard . . . to breathe sometimes" because she is not able to

"move bowels on [her] own." The condition also feels like "small electric voltage things that

[she] feel[s] in three differences places" in her abdominal area. Id. at 63. Furthermore, Plaintiff

testified that her condition affects her ability to function because she often "doesn't feel well at

all" and testified that she has to lay down "about three hours, four hours a day." Id. at 64–65.

With respect to Plaintiff's COPD diagnosis, she testified that she is unable to walk for

more than 15 to 20 minutes one time per day because her "feet [and] ankles . . . swell up." Id. at

68. Plaintiff also testified that she suffers from peripheral neuropathy which causes sharp,

shooting pains in her legs on an almost daily basis. Id. She testified that she cannot sit in an

upright position at a table or desk and must lean side to side. Id. at 69. Plaintiff also stated that

she has PTSD which causes flashbacks, confusion, and bouts of anger "at the world." Id. at 74–

75. Plaintiff also stated that she does not have friends and that she feels uncomfortable being

around men. Id. at 76.

8. *August 20, 2020, Hearing Concerning Dr. Dhiman*

On August 20, 2020, Plaintiff attended a telephone hearing before ALJ Greisler. Id. at 97. This hearing was held so that Plaintiff would be given the opportunity to cross-examine Dr. Dhiman. Id. at 98.

Dr. Dhiman testified that he is Board-certified only in internal medicine, and "sees patients" when he visits Puerto Rico, where he lives 6 months out of the year. Id. at 102–03. Dr. Dhiman also testified that he did not perform a physical examination of Plaintiff, and that, "if I were to see a patient and not perform a physical examination, it's not considered a complete encounter." Id. at 104. Finally, Dr. Dhiman confirmed that he has no certification in psychiatry. Id.

## B. The ALJ's Decision

On September 2, 2020, the ALJ determined that Plaintiff has "not been under a disability, as defined in the Social Security Act, since September 5, 2017, the date the application was filed." Tr. at 25 (citation omitted). The ALJ reached this conclusion by proceeding through the five-step sequential evaluation process for evaluating disability under the Social Security Act. Id. at 11 (citing 20 C.F.R. § 416.920(a)).

At step one of the five-step analysis, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 5, 2017, the application date." Id. at 12 (citation omitted). At step two, the ALJ found that Plaintiff had the following severe impairments: massive splenomegaly, neuropathy, carpal tunnel syndrome, myelofibrosis, lumbar spine degenerative changes, asthma, COPD, depressive disorder, antisocial personality disorder, anxiety disorder, and PTSD. Id. (citation omitted). Id. At step three, the ALJ determined that

none of these impairments "meets or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 18.

At step four, the ALJ found that Plaintiff

> had the residual functional capacity to perform light work as defined in 20 CFR 416.967.1567(b) except occasionally stop, balance, crouch, crawl, kneel and climb stairs and ramps. The individual cannot climb ladders, ropes, or scaffolds or work at unprotected heights. The individual can frequently reach . . . and feel and use foot controls. The individual cannot tolerate concentrated exposure to extreme heat or cold, humidity, or respiratory irritants. The individual cannot work with caustic or toxic chemicals. The individual can perform simple and routine tasks and tolerate occasional interaction with supervisors and coworkers and incidental contact with the public. The individual can work in an environment that is not stringently production or quota-based and thus may not perform fast-paced assembly line type of work, but can meet production requirements that allow him/her to sustain a flexible and goal-orientated pace. The individual can make simple work place decisions and tolerate occasional changes.

Id. at 15–16. In reaching this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." Id. at 16. The ALJ "also considered medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." Id.

Furthermore, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's symptoms concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 16.

The ALJ specifically found that the "medical evidence of record indicates that, despite her impairments, the claimant is capable of performing a range of exertionally light work." Id. at

17. The ALJ considered Plaintiff's biopsies, ultrasounds, a CT colonography, multiple CT scans, hematology and oncology examinations, neurological examinations, and X-rays that occurred from 2013–2020. Id. at 17–18. The ALJ also considered the notes and reports from Plaintiff's therapy sessions and medication management examinations. Id. at 20.

The ALJ then recounted her analysis of the opinion evidence of record. First, the ALJ examined the opinions of Dr. Lorenson and Dr. Poss. Dr. Lorenson opined that Plaintiff had no gross limitations besides moderate limitations for bending, lifting, and reaching; Dr. Poss opined that Plaintiff could perform medium work activity, frequently stoop, and avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. Id. at 21. The ALJ found these opinions partially persuasive. Id. The ALJ noted: "Although treatment notes and physical examinations do not support a need for a restriction from medium lifting, giving her the utmost benefit of the doubt in light of her subjective complaint's [sic], the undersigned finds that the claimant is best suited to a range of work at the light exertional level." Id.

Second, the ALJ found the opinion of Board-certified internal medicine physician, Dr. Dhiman, persuasive. Id. Dr. Dhiman completed interrogatories and testified at the August 2020 hearing that Plaintiff:

> could perform a range of light work due to history of bilateral carpal tunnel syndrome and degenerative changes of the lumbar spine. The claimant could frequently reach overhead and in all other directions, handle, finger, feel, and push/pull with the bilateral upper extremities due to history of carpal tunnel syndrome and EMG findings. The claimant could frequently operate foot controls due to decreased sensation of the lower extremities. In addition, the claimant's moderate peripheral neuropathy and lumbar spine changes would limit the claimant to frequent balancing, occasionally climbing stairs and ramps, stooping, kneeling, crouching, and crawling, and never climbing ladders or scaffolds. The claimant should never be exposed to unprotected heights; occasional exposure to moving mechanical parts and operating a motor vehicle; continuous exposure to respiratory irritants, humidity

> and wetness, and extreme cold or heat; and avoid toxic and caustic
> chemicals due to mental health impairments.

Id. (internal citations omitted). The ALJ found Dr. Dhiman's opinion persuasive because: "[I]n addition to his medical expertise and program familiarity, Dr. Dhiman had the opportunity to review the entire record and to consider the claimant's hearing testimony when forming his conclusions and it largely consistent with the assessment of the claimant's primary care physician, regarding her physical abilities." Id.

Third, the ALJ deemed Dr. Schaich's opinion "partially persuasive." Id. at 22. Dr. Schaich opined that Plaintiff:

> had no evidence of limitation in her ability to understand, remember,
> or apply simple and complex directions and instructions; sustain
> concentration and perform a task at a consistent pace; sustain an
> ordinary routine and regular attendance at work; maintain personal
> hygiene and appropriate attire; and be aware of normal hazards and
> take appropriate precautions. The claimant had mild limitation in her
> ability to use reason and judgment to make work related decisions;
> interact adequately with supervisors, co-workers, and the public;
> and regulate emotions, control behavior, and maintain well-being.
> Dr. Schaich assessed that the results of the examination appeared to
> be consistent with psychiatric problems, but in itself did not appear
> to be significant enough to interfere with the claimant's ability to
> function on a daily basis.

Id. The ALJ found this opinion partially persuasive because:

> the totality of the medical evidence of record support additional
> restrictions in order to avoid an exacerbation of the claimant's
> mental symptomology. Specifically, to account for the claimant's
> anxiety disorder, depressive disorder, PTSD, and anti-social
> personality disorder, it is necessary to limit the claimant to simple
> and routine tasks and simple work place decisions in a flexible
> environment with a goal oriented pace and the ability to tolerate
> occasional changes in the work place.

Id.

Fourth, the ALJ found State Agency psychological consultant, Dr. Marks, persuasive. Dr. Marks assessed that Plaintiff "had mild limitations in understanding, remembering, or applying

information and moderate limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or mange oneself." <u>Id.</u> Additionally, he opined that "despite some limitations, the claimant was able to understand and remember instructions and procedures, maintain a routine, interact and adapt." <u>Id.</u> (citation omitted). The ALJ found this opinion persuasive because Dr. Marks had "program knowledge and because it is consistent with benign findings on mental status examination, routine therapy and medication, and the claimant's own reported activities for daily living." <u>Id.</u>

Fifth, the ALJ found the joint opinion of LCSW Trifiletti and Dr. Hudyncia—who both opined that Plaintiff had "marked" to "extreme" limitations in her ability to perform all mental work activities, and would be off task at least 50 percent of the workday, as well as be absent more than four days per month—not persuasive. <u>Id.</u> The ALJ found this opinion not persuasive because it "appear[s] to be based almost exclusively on the claimant's complaints of difficulty interacting with others and leaving her home. However, the claimant stated that she could complete her activities of daily living; she experienced positive response from prescribed medications without side effects; and she practiced mindfulness and healthy communication skills." <u>Id.</u> According to the ALJ, Plaintiff stated that she could, "complete her activities of daily living; she experienced positive responses from prescribed medications without side effects; and she practiced mindfulness and healthy communication skills. Furthermore, the claimant reported that she was able to attend appointments, go to garage sales, complete surveys online, use social media, and spend time with family." <u>Id.</u> (internal citations omitted).

Sixth, the ALJ found the joint opinion of Dr. Hudynica and Dr. Shkane partially persuasive. <u>Id.</u> at 23. This opinion found that Plaintiff:

> was moderately limited in her ability to walk, lift, carry, and climb stairs and had no evidence of limitation standing, sitting, seeing,

> hearing, speaking, and using hands (C39F). The claimant was very limited in her ability to interact with others, maintain socially appropriate behavior, and function at a consistent pace; moderately limited in ability to carry out instructions, maintain attention and concentration, make simple decisions; and no evidence of limitation in understanding and remembering instructions, and maintaining basic standard of personal hygiene.

Id. The ALJ, however, found the mental restrictions findings not persuasive because the "record does not support that the claimant was very limited in her ability to interact with others, adapt to changes, and maintain pace." Id.

The ALJ also considered the third-party statement from Plaintiff's significant other, but declined to elaborate on "evidence that is inherently neither valuable nor persuasive." Id. (citation omitted). And thus, the ALJ concluded: "[T]aking into account the clinical and laboratory evidence, the medical opinions, and the claimant's testimony, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work." Id. The ALJ also concluded that Plaintiff was unable to perform any past relevant work. Id.

At step five, the ALJ found that based on Plaintiff's RFC, age, education, and the relevant guidelines, Plaintiff would be able to perform the requirements of representative occupations including "Marker, Retail," "Linen Grader," and "Labeler." Id. at 24. Accordingly, the ALJ concluded that a finding of "not disabled" is appropriate. Id. at 25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's disability decision the final decision of the Commissioner. Id. at 1–6. Plaintiff now appeals that decision in this Court.

### C. Present Action

Plaintiff commenced suit in this Court on January 27, 2021, to challenge the denial. See Compl. Plaintiff has moved for judgment on the pleadings, Dkt. No. 11 ("Plaintiff's Brief"), and

argues that (1) the ALJ erred in finding the opinion of Dr. Dhiman persuasive because Dr. Dhiman "had no expertise in the medical fields associated with the plaintiff's disabling impairments" and because of his purported admission that his evaluation was incomplete; (2) the ALJ failed to "properly apply the law when she found unpersuasive all medical opinions from treating sources while accepting as persuasive the opinions of sources that never examined the plaintiff or had only one brief encounter"; and (3) the ALJ failed to properly find that Plaintiff's allegations are consistent with the medical evidence and other evidence in the record.[2]

First, Plaintiff argues that the ALJ "was mistaken to find Dr. Dhiman's opinion persuasive" because he acknowledged that he did not conduct an examination of Plaintiff, and further conceded that "he would never offer an opinion about functional abilities in his own practice without conducting an examination." Pl.'s Br. at 16. Thus, his own evaluation was allegedly incomplete. Additionally, Plaintiff argues that Dr. Dhiman had no expertise in relevant medical fields associated with Plaintiff's impairments. Id.

Second, Plaintiff contends that the ALJ failed to properly apply the law when she weighed the medical evidence. In particular, Plaintiff asserts that "the opinions of treating sources for both mental and physical healthcare possess certain qualities that elevate them above the state agency and consultative sources." Id. And as a result, the ALJ erred when she found the opinions of Plaintiff's treating doctors less persuasive than the "opinions of Dr. Schaich as he examined the plaintiff only once and briefly." Id. at 18. Plaintiff also maintains that certain Social Security regulation required the ALJ to contact Plaintiff's treating sources to perform the applicable examinations, and the ALJ failed to do so, which was also in error. Id. at 18–19.

---

[2] Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c) in accordance with Local Rule § XII, 1.1, and General Order #18.

Plaintiff's final argument is that the ALJ erred when she found that Plaintiff's allegations were inconsistent with the evidence in the record. Id. at 20. After laying out what Plaintiff identifies as the relevant regulations, Plaintiff states that: "The ALJ's discussion of the plaintiff's contentions is not in keeping with the application regulations and Social Security Rulings" and that, "[m]oreover, nowhere in the regulations in general, or in 20 CFR [§] 404.1529 in particular, is it required that a claimant's allegations regarding symptoms be 'entirely' consistent with the objective evidence of record. This is a misapplication of the law, and an unreasonable burden." Id. at 23

In response, the Commissioner filed a motion for judgment on the pleadings. Dkt. No. 12 ("Commissioner's Brief"). The Commissioner contends that the ALJ properly found Dr. Dhiman's opinion persuasive because it was "uncontradicted," and "largely consistent with all of the medical opinions in the record." Comm'r's Br. at 10–11. The Commissioner also argues that the ALJ properly found Dr. Schaich's opinion more persuasive than the joint opinion from Ms. Trifiletti and Dr. Hudyncia. Id. at 12. Specifically, the Commissioner posits that Dr. Schaich's opinion was "better-supported and more consistent with other evidence." Id. at 13. Additionally, the Commissioner states that Plaintiff misreads the regulations she cites and that the "rule [Plaintiff cites concerning medical evaluations] describes a *nonexclusive* list of situations within the context of the ALJ's discretionary authority to order consultative examinations." Id. at 15 (emphasis in original). Thus, contrary to Plaintiff's position, the Commissioner contends that the ALJ had discretion to contact Plaintiff's treating source. Id. Finally, the Commissioner argues that the ALJ properly found Plaintiff's statements inconsistent with the evidence because the ALJ was not required to take Plaintiff's subjective statements at face value. Id. at 16.

## II.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). If supported by substantial evidence, the Commissioner's findings "will be sustained . . . even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). However, "[w]ithin that limitation on its scope, appellate review of an administrative record is plenary, and not merely a rubber-stamping of the administrative conclusion." Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258. Although an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record, see Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"), the ALJ cannot "pick and choose evidence in the record that supports his conclusions." Cruz v. Barnhart, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004).

When claiming error, a plaintiff bears the burden of showing he was harmed by it. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking [an] agency's determination."). However, "[t]o say that the claimant has the 'burden' of showing that an error was harmful is not to impose a complex system of 'burden shifting' rules or a particularly onerous requirement." Id. at 410. The Second Circuit has not definitively ruled on the required showing to warrant a remand. But some district courts within the Second Circuit have found that the "mere probability" or "possibility" of prejudice to a Social Security claimant is enough to warrant remand to the Commissioner. See, e.g., Koutrakos v. Astrue, 906 F. Supp. 2d 30, 39 (D. Conn. 2012); Torres v. Colvin, No. 13-CV-1914, 2015 WL 13729869, at *6 (D. Conn. Dec. 2, 2015), report and recommendation adopted, 2016 WL 1182978 (D. Conn. Mar. 28, 2016).

Furthermore, "the substantial evidence" standard of review applies only to the Commissioner's factual determinations; similar deference is not accorded to the Commissioner's legal conclusions or application of legal standards. See Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

## III.   DISCUSSION

### A.  The ALJ's Alleged Error in Relying on Dr. Dhiman's Opinion

According to Plaintiff, the ALJ erred by finding Dr. Dhiman's opinion persuasive because (1) Dr. Dhiman had no specialized "expertise" in the medical fields (psychiatry or neurology) associated with Plaintiff's impairments; and (2) because his opinion was concededly incomplete since he did not conduct a physical examination. Pl.'s Br. at 16.

To the extent Plaintiff argues that the ALJ erred because she relied on an opinion from a medical consultant without a specialization in psychiatry or neurology, the Court disagrees. At the outset, the Court notes that Plaintiff does not cite any case or regulation supporting this argument. See generally Pl.'s Br. Likewise, the Court is unaware of any case or regulation requiring the specific degree of specialization that Plaintiff seems to suggest is needed. However, one court in this Circuit addressing the extent to which a claimant with peripheral neuropathy (the ailment at issue here) was disabled, analyzed the persuasiveness of a *podiatrist's* opinion, without so much as commenting on the podiatrist's lack of specialization in neurology. See Valder v. Barnhart, 410 F. Supp. 2d 134, 138–39 (W.D.N.Y. 2006). Furthermore, the Court agrees with the Commissioner that Dr. Dhiman's lack of psychiatric specialization is inapposite, given that he opined only on Plaintiff's physical limitations. Accordingly, this argument is unavailing.

Plaintiff next argues that Dr. Dhiman's opinion is unreliable because Dr. Dhiman "acknowledged that he would never offer an opinion about functional limitations in his own practice without conducting an examination" and "admitted that there have been times when his opinions about functional abilities after examination were not consistent with records from other sources." Pl.'s Br. at 16. However, Plaintiff declines to point to any case law or regulation supporting her argument about Dr. Dhiman's purported incomplete physical examination. See generally Pl.'s Br. Instead, under 20 C.F.R. § 416.920(c)(a), the "most important factors" in

17

determining a medical opinion's persuasiveness is the consistency and supportability of the medical opinion. The regulations (and case law) make no mention of how a medical consultant must conduct their evaluations in relation to how they conduct themselves in private practice. See 20 C.F.R. § 416.920c. As a result, the Court finds this argument unavailing as well.

### B. The ALJ's Alleged Error in Finding Dr. Schaich's Opinion More Persuasive Than the Joint Opinion of Ms. Trifiletti and Dr. Hudyncia, and the Related Failure of the ALJ to Contact a Treating Source

Plaintiff next posits that the ALJ erred by not finding the joint opinion of Ms. Trifiletti and Dr. Hudyncia more persuasive than Dr. Schaich's opinion because Dr. Hudyncia "frequently examined [Plaintiff] for the purposes of mental health care." Pl.'s Br. at 17. Plaintiff relatedly asserts that 20 C.F.R. § 404.1520(c) "points toward a greater persuasiveness for the treating opinions." Id. Plaintiff notes the relevant factors considered under 20 C.F.R. § 404.1520c including "[l]ength of the treatment relationship; [f]requency of examinations; [p]urpose of the treatment relationship; [e]xtent of the treatment relationship; and [e]xamining relationship." Id. at 17 (citing 20 C.F.R. § 404.15209(c)(3)).

As an initial matter, while the regulations do not define "frequently," the Court notes that the opinion which Dr. Hudyncia cosigned with Ms. Trifiletti was predicated on two examinations of Plaintiff. Tr. at 1107–10, 1215–10. Consequently, labeling two consultations as "frequent" stretches the word beyond its meaning. See "Frequent," Merriam Webster's Collegiate Dictionary (10th ed. 1996) ("often repeated or occurring"). More importantly, while the relationship a treating physician has with the claimant must be considered, the Social Security regulations provide that "the most important" factors remain supportability and consistency. See 20 C.F.R. § 416.920c(b)(2).

Here, the ALJ concluded that Dr. Schaich's opinion was more persuasive because it was better-supported and more consistent with the other evidence. Tr. at 22–23. Conversely, the ALJ

found Ms. Trifiletti and Dr. Hudyncia's opinion unpersuasive because it appeared to be based exclusively on Plaintiff's subjective complaints of difficulty interacting with others and leaving her home. Id. at 22. The ALJ also rejected the extreme limitations described by Ms. Trifilietti and Dr. Hudyncia because the limitations were inconsistent with Plaintiff's positive response to prescribed medications, Tr. at 512, 515, 1442; incompatible with Plaintiff's treatment progress showing mindfulness and healthy communication, id. at 923, 927, 935; and irreconcilable with the progression in Plaintiff's activities, including attending appointments, going to garage sales, and spending time with family, id. at 22, 515, 936, 1095. Notably, Ms. Trifiletti's own treatment notes routinely described Plaintiff as pleasant, engaging, attentive, and alert, as well as having a happy or a euthymic mood. See, e.g., Tr. at 862, 864, 867. Cf. LaFave v. Comm'r of Soc. Sec., No. 16-CV-0621, 2017 WL 4011264, at *5 (N.D.N.Y. Sept. 11, 2017) (finding that substantial evidence supported ALJ's rejection of treating physician's opinion of disabling limitations where his own treatment notes showed intact sensation and strength, normal gait, and no apparent distress, despite reports of muscle pain and reduced lumbar range of motion). As a result, the Court disagrees with Plaintiff that the ALJ erred by elevating the consistency and supportability factors above the treating source considerations. Cf. 20 C.F.R. § 404.1527 (outlining that under the old regulations, special weight was afforded to the claimant's treating source).

Plaintiff relatedly challenges the ALJ's decision to give partial weight to Dr. Schaich's opinion. This challenge is predicated on the allegation that the ALJ failed to follow Social Security regulations when she ordered a psychological evaluation by Dr. Schaich, rather than requesting one by Dr. Hudyncia. Pl.'s Br. at 18. To support this argument, Plaintiff cites 20 C.F.R. § 404.1519h, which states:

> Your treating source.

> When in our judgment your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination. Even if only a supplemental test is required, your treating source is ordinarily the preferred source.

Plaintiff also cites 20 CFR § 404.1519i, which provides:

> We will use a different medical source than your medical source for a purchased examination or test in situations including, but not limited to, the following:
>
> (a) Your medical source prefers not to perform such an examination or does not have the equipment to provide the specific data needed;
>
> (b) There are conflicts or inconsistencies in your file that cannot be resolved by going back to your medical source;
>
> (c) You prefer a source other than your medical source and have a good reason for your preference;
>
> (d) We know from prior experience that your medical source may not be a productive source, such as when he or she has consistently failed to provide complete or timely reports; or
>
> (e) Your medical source is not a qualified medical source as defined in § 404.1519g.

From these regulations Plaintiff argues that the ALJ erred because none of the delineated

circumstances provided in the regulation are applicable. Pl.'s Br. at 19. Plaintiff contends:

> There is no evidence in the record that the treating sources ever indicated a preference to not perform the examination or that they did not have any equipment necessary to provide specific data. In fact, the record is entirely devoid of any attempt by the Social Security Administration contact any of the treating sources to perform any examination. There is no indication in the record that there were conflicts or inconsistencies in the file that could not be resolved by a treating source. There is no indication record that the plaintiff expressed a preference to have an unknown physician perform the examination rather than any of his treating sources. And there is no indication record that the Social Security Administration had any prior experience that would indicate that the treating source

> would not be productive. In fact, there was a complete and utter failure of the Social Security Administration to even attempt to abide by its regulations with regard to consultative examinations in this matter.

Id. at 19–20.

"The ALJ has discretion to order a consultative examination to further develop the evidentiary record.'" Janes v. Colvin, No. 15-CV-1518, 2017 WL 972110, at *7 (N.D.N.Y. Mar. 10, 2017) (quoting Cox v. Astrue, 993 F. Supp. 2d 169, 177 (N.D.N.Y. 2012)). "While a treating physician is 'ordinarily' the preferred source to perform an additional examination provided that he is 'qualified, equipped, and willing' to do so for the prescribed fee, 20 C.F.R. §§ 404.1519h, 416.919h, this preference is not absolute, and the regulations provide a non-exhaustive list of situations where another source may be consulted, id. §§ 404.1519i, 416.919i.'" MacGaffick v. Comm'r of Soc. Sec., No. 5:15-CV-778, 2016 WL 5417406, *8 (N.D.N.Y. July 28, 2016) (quotations and citation omitted). Moreover, one court in this District has found that an ALJ's failure to "seek a consultative examination, or a consultative examiner from a treating source, does not constitute legal error." Wood v. Comm'r of Soc. Sec., No. 15-CV-1030, 2016 WL 7077862, at *7 (N.D.N.Y. Oct. 27, 2016), adopted sub nom. Wood v. Colvin, 2016 WL 7053498 (N.D.N.Y. Dec. 5, 2016). Additionally, courts consider whether the claimant "requested one of [her] treating sources to perform the exam." Frank R. v. Comm'r of Soc. Sec., No. 20-CV-1096, 2022 WL 1441166, at *10 (N.D.N.Y. Mar. 15, 2022).

Here, the Court agrees with Plaintiff that none of the scenarios specifically enumerated in the regulations are present. However, the regulations contain a catchall that includes the language, "in situations including, but not limited to, the following." 20 CFR § 404.1519i. This catchall suggests a degree of discretion by the ALJ; this catchall along with the fact that Plaintiff did not "request[] one of [her] treating sources to perform the exam," 2022 WL 1441166, at *10,

advises in favor of not finding legal error under these circumstances.[3] Accordingly, the Court

does not find remand appropriate on the basis of the regulations cited by Plaintiff in this instance.

### C.  The ALJ's Alleged Failure to Find Plaintiff's Statements Consistent with Other Evidence

Plaintiff's final argument is that the ALJ erred by not finding the statements Plaintiff

made concerning her limitations consistent with the evidence. Pl.'s Br. at 20. In particular,

Plaintiff observes that "the treating physicians offered opinion evidence consistent with the

plaintiff's allegations." Id.

Although an ALJ is not required to unquestionably accept a claimant's subjective

complaints, see Genier v. Astrue, 606 F.3d 36, 49 (2d Cir. 2010), "an ALJ rejecting subjective

testimony must do so explicitly and with specificity to enable the Court to decide whether there

are legitimate reasons for the ALJ's disbelief and whether [her] decision is supported by

substantial evidence." Batchelder v. Astrue, No. 10-CV-267, 2011 WL 6739511, at *10

(N.D.N.Y Dec. 23, 2011) (citing Melchior v. Apfel, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998)).

"The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with

medical evidence, the lack of medical treatment, and her own activities during the relevant

period." Batchelder, 2011 WL 6739511, at *10 (citation omitted). In particular, the ALJ must

weigh the claimant's subjective statements against the objective evidence and other

considerations reflecting the intensity of her symptoms; the relevant factors include: (i) the

claimant's daily activities; (ii) the location, duration, frequency, and severity of her pain or other

---

[3] If Plaintiff had appropriately requested an examination by her treating source and the ALJ declined to do so, perhaps remanding would have been appropriate. Cf. Janes v. Colvin, No. 6:15-CV-1518, 2017 WL 972110 (N.D.N.Y. Mar. 10, 2017), aff'd sub nom. Janes v. Berryhill, 710 F. App'x 33 (2d Cir. 2018) ("Under the regulations, an ALJ must 'make every reasonable effort to help the claimant obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports.'") (citation omitted).

symptoms; (iii) precipitating or aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medications taken; (v) what treatment she receives other than medication; (vi) any other measures she uses to relieve pain or other symptoms; and (vii) other factors concerning her functional limitations and restrictions. See 20 C.F.R. § 416.929(c)(3).

During the first hearing, Plaintiff stated that "[her] enlarged spleen" made it hard for her to breathe sometimes, and caused bloating and constipation, as well as pain in her left side "like small electrical voltage things." Tr. at 61–63. She further noted that her COPD affected her ability to walk for longer than 15 or 20 minutes, id. at 66, that her peripheral neuropathy caused weakness and shooting pains in her extremities, id. at 67–68, and that she could not sit for longer than 30 seconds. Id. at 70. The functioning report Plaintiff submitted when she first applied for SSI supports her testimony, see, e.g., id. at 378–82. With respect to her mental impairments, Plaintiff testified that she, "cr[ies] all the time," has flashbacks, and gets confused when she's under pressure. Id. at 74. Plaintiff's functioning report also indicates comparable mental impairments. See id. at 375–377.

Nevertheless, the Court agrees with the Commissioner that substantial evidence supports the ALJ's finding that Plaintiff's statements were inconsistent with other evidence. Contrary to Plaintiff's allegations about her ability to sit, stand, walk, or lift objects, the ALJ assessed that her records routinely demonstrated normal physical examinations, including full strength, steady gait, full range of motion, and normal neurological testing. See id. at 21 (citing id. at 1010, 529, 1232–39, 1026, 651–52, 655, 659, 1236–45, 1276–77). Likewise, the medical evidence the ALJ relied on showed that Plaintiff's laboratory testing and imaging also showed stable or mild physical conditions. Id. at 17– 18 (citing id. at 746, 1104, 523–27, 1021–24).

In the ALJ's rejection of Plaintiff's subjective testimony, she also relied on several medical opinions. Tr. at 21–22. See 20 C.F.R. § 416.929(c)(1) (noting that ALJs "also consider the medical opinions" when evaluating the intensity and persistence of a claimant's symptoms). The ALJ noted that Dr. Lorensen assessed no limitations for sitting, standing, or walking (and just moderate limitations for bending, lifting, and reaching). Tr. at 21 (citing id. at 653). Dr. Dhiman also opined that Plaintiff could perform a reduced range of light-exertion work. Id. at 21 (citing id. at. 1237– 42). Plaintiff's own doctor, Dr. Shkane, opined that Plaintiff had no limitations standing, sitting, or using her hands, and just moderate limitations walking, lifting, carrying, pushing, pulling, bending, and stairclimbing. Id. at 23 (citing id. at 1246–47).

Likewise, with respect to the mental limitations that the ALJ assessed, the ALJ found that Plaintiff's subjective statements were not consistent with the medical evidence. Tr. at 16, 20. Specifically, the ALJ noted that, "treatment records demonstrate that the claimant was alert and oriented times three with normal mood and affect, normal behavior, normal thought content, intact cognition, and no hallucinations." Id. at 20 (citing id. at 659, 663, 667, 771, 1117). The ALJ further relied on Dr. Schaich's report that he "observed that the claimant presented as cooperative, with an adequate manner of relating and social skills, normal motor behavior and posture, hypervigilant and tearful, appropriate eye contact, fluent and clear speech, and adequate expressive and receptive language skills," and that: "The claimant exhibited coherent and goal directed thought processes and she was oriented times three with a clear sensorium. The claimant had intact attention and concentration, intact recent and remote memory, average cognitive functioning, and poor insight and judgment." Id. at 20–21 (citing id. at 646–47).

Finally, to the extent Plaintiff argues that the ALJ's phrasing—that Plaintiff's statements were not "entirely consistent with medical evidence"—demonstrates legal error, Pl.'s Br. at 23,

the Court finds this argument unavailing. Irrespective of the ALJ's choice of phrasing, the Court is satisfied that the ALJ "rejected . . . [Plaintiff's] . . . subjective testimony . . . explicitly and with specificity" as outlined above. Batchelder, 2011 WL 6739511, at *10. Indeed, the ALJ, "discount[ed] [P]laintiff's testimony to the extent that it [was] inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period." Id.

Accordingly, because the Commissioner's final decision is supported by substantial evidence, the Court affirms the Commissioner's final decision.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's Motion for Judgment on the Pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 27, 2023
            Albany, New York

LAWRENCE E. KAHN
United States District Judge